Thank you, Your Honor. Good afternoon. My name is Rochelle Wilcox with Davis-Wright-Tremain. I'm here on behalf of the petitioner Fonseca Luis, Mr. Ricardo Luis Fonseca Rojo, Mr. Rojo, Mr. Fonseca. Thank you, initially, for agreeing to hear this comeback case and for scheduling a special session to hear it. We, Mr. Fonseca and I, definitely appreciate the court's courtesies. Mr. Fonseca seeks asylum and withholding of deportation due to persecution in Chile because of his sexual orientation. Unless the court would like to address a different issue first, I will start with what I believe is the most important issue in this case. The opening verdicts We know, and since your time is limited, I'd like to say I'd like you to distinguish the Chowdhury case from your case. I'm sorry, which case? The Galey case. The Galey case. G-A-L-E-Y, sorry, that's really another case. Thank you. I think the Galey case is very different because its facts are very different. Galey involved an issue of whether or not there would be, if I remember correctly, economic, in that case, Christians were subject to discrimination. And the court found that the Egyptian government had dealt with the issues that arose between Christians and Muslims. And that during an uprising that had caused a lot of problems between them, that had caused a lot of damage, harm to people, the Egyptian government arrested 1,400 Muslims and 100 Coptic Christians. And so it was persecuting the Muslims for that violence. And therefore, the government there was not unable or unwilling to control the activities of those who were persecuting that protected group. Here in contrast, the government both participates and it is unwilling to control the people who are attacking gays, homosexual men and women in Chile. Yes, Judge Schroeder. Okay, I just guess, what distinguishes your client's case from all of the other gays and lesbians in Chile? I appreciate that that is a difficult question. Here there is evidence that he personally was persecuted repeatedly. Our opening facts discuss a series of facts that occurred over less than a three-year period. In that three-year period, he was attacked four different times. The police knew about it and did nothing at all. The final attack, which happened in September of 1996, which was basically eight months before he came to the United States, he was beaten up by a group of assailants. The police came and they teased him and said, they are trying to make you men. They didn't do anything at all, even though he and his boyfriend were beaten up for merely walking along the street holding hands. Beyond that, there is evidence that the police participated three different times, once a year for three years. Now, that's on average. It was twice in 1995, if I remember correctly, and then once later on. He was arrested simply for being in a gay establishment. And not arrested as in he was actually subject to criminal charges, but the police took him the first time, they made them stand spread-eagle against a wall for two hours. Two hours, holding yourself still. They beat them with a baton on their behinds, and then they let them go. The second time, they were, I don't remember if this is the second or the third time, but one time they were held in a suffocating hot van for five hours, and then the police let them go. They were, it is clear to him, it is clear to homosexuals in Chile, that if you are openly gay in Chile, you will be attacked by the police, the police will. That sort of doesn't answer Judge's sort of question. What you're just saying is that he's not distinguished from others, that it's clear to homosexuals or gays in Chile that everybody's at equal risk. Now, the question was, how do you establish that his risk is greater than others? For one thing, he, and I appreciate that the court can't consider change circumstances, really, but he is openly gay, having lived in this country for now 12 and a half years. He cannot hide who he is in a way that others might be able to. I think that the key question before this court is whether or not the U.S. is going to send him back to Chile and force him to hide his sexuality, force him to live in hiding. There are, it is possible for gay men to live in Chile if they are in hiding, and I appreciate you're trying to draw the line between him and every other gay man in Chile. He may appreciate it, but how do you distinguish it? Is it, do we look to his characteristics or his experience in Chile? I think both. I would point out first that under this Court's decision in COSATS, and I'm looking for the citation, and I'll provide it, it's 31-Fed-3847. That was a case in which multiple people were arrested together as a group, and the court held that the reference to singling out means that the applicant must show that he will suffer as a member of the group being persecuted, and he has shown that by his own personal experiences, and his personal experiences show that he has been singled out, that he has been attacked by police, and forced to undergo what I think are torturous situations. Can we write, because he has been persecuted, we have been beaten, so we, so you're writing our opinion for us. We're not going to write an opinion that says that anyone who wants to come out from Chile can come to this country and then get relief. Sure. You don't want us to write that. So we said, well, it's not just every gay person, so it's somebody who... Who has himself been persecuted, who cannot hide his sexuality, who will, we know by his experiences, be persecuted if he is returned. Well, are you going to limit this to people who have been persecuted or have experienced harassment, discrimination, which borders on persecution? This court's decisions recognize that it's a totality of circumstances, and I think that when you look at the totality of circumstances here, these are all fact-intensive questions. And when you look at the totality of circumstances here, forcing him to live under these circumstances with what he has experienced for all of, for three years before coming to this country, is persecution. And that's all that the court needs to find here, is that on these facts, this is persecution, and he is entitled to relief under our laws. We're not determining, really, whether it is persecution or whether he has an objective fear of future persecution. That is a question that is presented to the court. We believe that the court's first opinion in this matter left the issue of past persecution open, and we have briefed that. The court, in its first opinion, said, absent past persecution, and then went into the question of the standard to apply to the well-founded fear aspect. We believe that in doing so, the court went to the easier of the issues, found a legal error, and just resolved that issue. And so I think that we can show both past persecution and a fear of future persecution. I apologize. Isn't it true that we have held that even though, where there has been discrimination that doesn't amount to whether or not there has been actual past persecution, we still take all those experiences into account when, in answer to Judge Reinhart's question, we determine whether he has a well-founded fear of future persecution? That is absolutely true, Your Honor. And isn't the key fact in your case that this is government sanction and a government participatory act specifically against your claim? That is absolutely correct, Your Honor. And the police know him. When he showed up to the station after he had been attacked by the residents of his home and eventually forced to move out of his apartment, they called him that faggot from El Robles, the street that he lives on. The police know him personally as a gay man, and that is a key fact. I see that I have 46 seconds remaining. If I may, I will reserve it for rebuttal. Thank you, Your Honor. Thank you. Good afternoon. May I please the Court? My name is Amy Fredersen, and I represent the government. This is the second time that this case has been before this Court. The last time that the case was before this Court, the Court remanded for the sole question of whether the petitioner in this case had a well-founded fear of future persecution, as such that the Court's review is limited to the Board's conclusion that the petitioner did not have an objectively well-founded fear of future persecution. Because substantial evidence supports the Board's conclusion that the petitioner did not have that objective, well-founded fear of future persecution, the Court should deny the petition for review. Let me just ask the same question. Let's assume that we agree with you that there's insufficient evidence for past persecution. Can't we take into account all of these events in determining whether or not there's a well-founded fear of future persecution? Well, the Court could take those events into account, but the record would still have to compel the conclusion that he had a well-founded fear. And the record in this case does not compel that conclusion because the evidence of record shows that homosexuals in Chile face discrimination but not persecution. The events that the petitioner in this case personally experienced kind of corroborate that conclusion because he did not experience past persecution. He only experienced discrimination. The record talks specifically about social prejudices and attitudes that discriminate against homosexuals and describes isolated hate crimes, but it does not describe the sort of – but it doesn't describe the sort of pervasive and widespread violence that would substantiate a finding of a well-founded fear of persecution absent past persecution. Are you saying that only when there is the type of persecution of an entire group that would entitle anyone or everyone to a fear of future persecution that you can have relief for all or none? No. Well, that is one way of demonstrating that you have a well-founded fear of persecution. And what is the other way? You don't have to have past persecution. You don't have to have past persecution, but you have to demonstrate that there is an objective, well-founded fear. So things in the country have to be sufficiently severe that he has what the court has described as a 10 percent chance of being persecuted. Well, what does that take? Assuming not everybody has that fear of future persecution, but conditions have to be so bad in general that there is a reason for fear of future persecution, what do you need if you don't have past persecution to have future – fear of – objective fear of future persecution? Well, the evidence would have to – the evidence would have to suggest that fear of future persecution, and it would be for the agency to weigh the evidence and make that decision in the first instance. In this case, when they – I understand the agency does it first, but what would there have to be short of everyone having that fear? What would there have to be for an individual to have a fear of future persecution? Well, in the absence of past persecution, the individual would have to demonstrate that the violence is sufficiently widespread and that he would have a sufficient chance of being singled out for that violence and that the violence that would occur would be sufficient to amount to persecution in order for him to demonstrate an objective, well-founded fear. And the board pointed to a number of reasons that the record in this case did not – did not – did not demonstrate that. So what are the reasons, then, that he doesn't qualify? Are those the reasons that listed in the board decision that he came back for six weeks to see his parents? Is that – that reason one of the reasons? Well, that's – that is one of the reasons that the board provided. And the second reason is that they eliminated the rule that sodomy was unlawful? Yes, that was another – that was another finding the board made. And what other reason is there? The board found that the record demonstrated that there was only social prejudices and isolated hate crimes as opposed to, like, widespread violence or, like, a sufficiently violent atmosphere. The board looked specifically at the – looked at the record and the evidence that was presented and found that the isolated incidents were not sufficient to demonstrate a well-founded fear of persecution absent past persecution. You mean the isolated incidents in the country generally? Right. Not as opposed to – Not as opposed to what? You're not referring to the fact that he was individually subjected to a number of incidents which let's assume fell short of persecution but were clearly harassment and physical harassment and mental harassment by the government as well as individuals? Right. But the – but the record does not compel the conclusion that the events that are taking place in Chile notwithstanding the fact that he's been targeted for discrimination indicate that he has a well-founded fear of being targeted for persecution. Okay. The – I mean, as the petitioner's counsel noted, this is a fact-intensive question and the facts should be resolved by the agency in the first instance and given deference to this court. And when the agency examined the facts in this particular case, they concluded that it was insufficient to warrant a finding of a well-founded fear of persecution. And what's our standard of review this time? The court is bound by the substantial evidence standard, so the court must find that the record compels a conclusion contrary to that that was reached by the board. The – also, I would like to point out that the conclusion that the board reached was not the conclusion that he could avoid persecution by hiding his sexual identity. Instead, it was a conclusion that he does not have a well-founded fear of persecution based on the evidence of the record. It was that even though his sexual identity was known, that what he feared was discrimination and harassment, not persecution. Let me just ask about the short visit home where he didn't seem to have any trouble. Yes.  Okay. You won't have any trouble, but just – you have to live the way the rest of us live. Well – As opposed to having the freedom to live. Well, I don't think that that was the conclusion that the board came to. The board noted that one of the things, among others, that undermined his particular claim was that after coming to the United States, he voluntarily returned to Chile. He was there for six weeks. During the six weeks that he was in Chile, he testified that he alerted friends and family who did not previously know that he was homosexual, that he was, in fact, homosexual, including some of his university professors. And during those six weeks, he did not experience any additional harms or problems. Did he walk down the street with his boyfriend? There wasn't evidence – there wasn't testimony regarding that, Your Honor. But there was – there was testimony that he was telling people that he was gay and that he wanted to move to the United States so that he could live gay more freely. And it doesn't – the record doesn't indicate that he was attempting to hide his sexual identity during those six weeks. To the contrary, he was telling people – Well, he didn't go to gay clubs or any of that. Well, there's – again, there's not evidence of record about that one way or the other. But nonetheless, the board concluded that the fact that he was able to return and be there without harm was just one of the things that served to undermine his claim. The board did point to other evidence of record, though, that – that indicated that while homosexuals do face discrimination, they don't face persecution. If the Court has any other questions. We don't have any further questions. Thank you. All right. Thank you. I will, of course, be very brief because I have very little time. There is evidence in the record that he did not return to any gay clubs after his final experience at a gay club. And I was looking for it, and I'm not finding it, of course. But it is around 267, I believe. And I apologize for not being able to give you an exact site. The site to him being called the faggot from El Robles, which proves that the police know him, is at 173 and 274 to 275. The Court, in closing, I want to reiterate what the Court was alluding to, that the fact that he went home without being molested means only that he didn't come out. He came out to very close friends and family, but he did not openly expose the fact that he was a gay man. And that's very different. And the BIA erred as a matter of law in relying on that and in overlooking much of the evidence in the record. Thank you, Your Honor. Thank you, counsel. The case just argued is submitted. The Court appreciates the argument presented by counsel for both sides. And the Court, for this session, stands adjourned. All rise. This Court, for this session, stands adjourned.
judges: Schroeder, Nelson D. W., Reinhardt